

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANDY RYAN PHOTOGRAPHER, LLC,

                          Plaintiff,                     **REPORT AND**
                                                      **RECOMMENDATION**

        v.

                                                   24-CV-3369
CITY VISTA, INC.,                               (Merchant, J.)
                                           (Marutollo, M.J.)
                         Defendant.
------------------------------------------------------------------X
**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiff Andy Ryan Photographer, LLC brings this action against Defendant City Vista,

Inc., seeking damages under the Copyright Act, 17. U.S.C. § 101 *et seq.* and the Digital Millennium

Copyright Act, 17 U.S.C. § 1201 *et seq.* ("DMCA"), for Defendant's alleged unauthorized use of

Plaintiff's photographs. *See generally* Dkt. No. 1.

      Currently pending before the undersigned, on a referral from the Honorable Orelia E.

Merchant, United States District Judge, is Plaintiff's motion for default judgment against

Defendant. *See* Dkt. No. 29; Text Order dated May 7, 2025. For the reasons set forth below, the

undersigned respectfully recommends that Plaintiff's motion be granted in part and denied in part.[1]

**I.**      **Background**

      **A.**      **Factual Allegations**

      The following facts are taken from the Complaint, Plaintiff's motion for default judgment,

and the attachments filed in support of Plaintiff's motion, assumed true for the purposes of this

motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("[I]n light of [Defendant's]

default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all

---

[1] Ryan Pinch, a judicial intern who is a third-year law student at the U.C. Berkeley School of Law, is gratefully acknowledged for his assistance in the research of this Report and Recommendation.

reasonable inferences in its favor[.]"); *see also Insured Advocacy Group LLC v. Tarp Solutions*, No. 24-CV-1560 (PAE) (RFT), 2025 WL 689001, at *1 (S.D.N.Y. Mar. 4, 2025) ("The Court must also be satisfied that the well-pleaded allegations contained in the complaint, which are taken as true after default, are sufficient to state a claim against Defaulting Defendants.").

Plaintiff is a limited liability company that owns the photographs of Mr. Andy Ryan, an architectural, interior design, and home products photographer. Dkt. No. 1 ¶ 10. Mr. Ryan has worked for over a decade creating photography that has been featured in numerous publications, including Architectural Digest and Forbes. *Id*.

Mr. Ryan, principal of Plaintiff, alleges that he created and owned the 11 photographs at issue (the "Subject Photographs") in the present matter and has registered the Subject Photographs with the United States Copyright Office. *Id*. ¶ 11; Dkt. No. 1-1; Dkt. No. 31-3. The Subject Photographs depict two properties, one located at 41 Kosciuszko Street in Brooklyn, NY 11205, and the other at 70 Kosciuszko Street in Brooklyn, NY 11205. Dkt. No. 1 ¶ 12.

Defendant is a New York corporation that does business at 100 A Broadway Suite 417, Brooklyn, New York. Dkt. No. 1 ¶ 5. Plaintiff alleges that Defendant, without consent or permission, used the Subject Photographs for commercial purposes on various listing websites, including Zillow, Trulia, and StreetEasy. *Id*. ¶ 13; Dkt. No. 1-2. Plaintiff contacted Defendant on March 28, 2024, regarding their repeated usage of the Subject Photographs, but they failed to reach a resolution. *Id*. ¶ 15.

### B. Procedural History

Plaintiff filed the instant Complaint on May 7, 2024. *See generally,* Dkt. No. 1. The Complaint alleges three causes of action: (i) copyright infringement and (ii) vicarious and/or contributory copyright infringement, both under the Copyright Act, and (iii) intentional removal

of copyright management information ("CMI") of the Subject Photographs under the DMCA.  Dkt. No. 1 ¶¶ 16-34.

Plaintiff effectuated service on Defendant by delivering copies of the Complaint and summons to the Secretary of State of the State of New York on May 13, 2024.  *See* Dkt. No. 6; N.Y. Bus. Corp. Law § 306.  Defendant did not file an answer or otherwise respond to the Complaint.

On January 11, 2025, the Court ordered Plaintiff to serve a copy of the summons and Complaint on Defendant at the address 100A Broadway Suite 417, Brooklyn, NY, as well as "any other address at which [Defendant] lists as a place of business, by January 17, 2025 and shall file proof of service by the same date."  Text order dated Jan. 11, 2025.  Plaintiff represented to the Court that it was unable to serve Defendant at the address listed in the order and attached an affidavit of non-service.  *See* Dkt. Nos. 23, 23-1.  Plaintiff made one further attempt to serve Defendant at an additional address from Defendant's real estate brokerage license page, but was again unsuccessful.  *See* Dkt. Nos. 24, 24-2.[2]

Prior to requesting a certificate of default from the Clerk of Court, Plaintiff was ordered to attempt service at 100A Broadway Suite 417, Brooklyn, NY 11211 and at two email addresses.  *See* January 24, 2025 Dkt. Order; Dkt. No. 25.  Plaintiff requested a certificate of default against Defendant, pursuant to Federal Rule of Civil Procedure 55(a), on March 6, 2025.  Dkt. No. 27.  The Clerk of Court entered the certificate of default against Defendant on March 7, 2025.  Dkt. No. 28.

On May 6, 2025, Plaintiff filed the instant motion for entry of default judgment.  Dkt. No. 29.  Plaintiff's motion includes: (1) a notice of motion (Dkt. No. 29); (2) a memorandum of law

---

[2] Plaintiff initially named Leanne Watson as a Defendant in this action, but she was dismissed by stipulation on September 17, 2024.  *See* Dkt. Nos. 1, 20; September 17, 2024 Dkt. Order.

(Dkt. No. 30); (3) an affidavit from Plaintiff's counsel (Dkt. No. 31); and (4) a proposed order of default judgment (Dkt. No. 32-1). Plaintiff additionally submitted a certificate of service indicating that it mailed a copy of the motion to Defendant at its last known address. *See* Dkt. No. 33. Plaintiff requests statutory damages in the amount of $550,000, actual damages of $77,200, costs of $715, and attorney's fees of $4,896. Dkt. No. 30 at 17-20.

On May 7, 2025, Judge Merchant entered an order referring Plaintiff's motion to the undersigned for a report and recommendation. *See* May 7, 2025 Dkt. Order. Defendant has not filed a response to date.

On August 29, 2025, the undersigned ordered Plaintiff to supplement its briefing to clarify the number of violations it alleges under 17 U.S.C. § 1202, as well as the amount of damages stemming from such violations. Text Order dated Aug. 29, 2025. On September 19, 2025, Plaintiff filed its supplemental letter. Dkt. No. 35.

## II.     Standard for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability.  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a motion for default judgment is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).  A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted).  The Court may also "consider numerous factors, including whether a plaintiff has been substantially

5

prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).  As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.  *See Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

III.   **Jurisdiction and Venue**

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants."  *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

A.    **Subject Matter Jurisdiction**

The Court has original jurisdiction over Plaintiff's copyright claims pursuant to 28 U.S.C. § 1338(a), which states, "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights."  *See, e.g.*, *Stokes v. Milkchocolatenyc LLC*, 681 F. Supp. 3d 226 (S.D.N.Y. 2023).  Therefore, the undersigned respectfully recommends a finding that the Court has subject matter jurisdiction over Plaintiff's claims.

B.    **Personal Jurisdiction**

6

"A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *5 (internal quotations and citation omitted). "Even where the Clerk of the Court has entered the defendant's default, [the] court may appropriately review the adequacy of service before entering a default judgment." *Prescription Containers, Inc. v. Cabiles*, No. 12-CV-4805 (CBA) (VMS), 2014 WL 1236919, at *5 (E.D.N.Y. Feb. 14, 2014) (quotations and citation omitted), *report and recommendation adopted*, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014).

New York state law permits service on a corporate defendant by "[p]ersonally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. Service of process on such corporation shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306(b)(1); *Logan v. World Luxury Cars, Inc.*, No. 15-CV-00248 (ENV) (PK), 2022 WL 2466834, at *3-*4 (E.D.N.Y. Mar. 30, 2022), *report and recommendation adopted*, 2023 WL 156878 (E.D.N.Y. Jan. 11, 2023) (finding such service proper); *see also* Fed. R. Civ. P. 4(e)(1) (allowing service under state law in the state where the district court is located). Here, Plaintiff properly served Defendant by serving the New York Secretary of State on May 13, 2024. Dkt. No. 6; *see Perez v. Mesa Azteca Corp.*, No. 23-CV-9374 (HG) (TAM), 2024 WL 5274641, at *5 (E.D.N.Y. Dec. 5, 2024) (finding service upon Secretary of State lawful under N.Y. Bus. Corp. Law § 306).

Second, New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016) ("A state has [ ] general jurisdiction over its residents."). Defendant is a New York corporation doing business in the District at 100 A Broadway, Suite 417, in Brooklyn, New York. Dkt. No. 1 ¶ 5. New York courts may exercise jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)); *see also* N.Y. C.P.L.R. § 301.

Therefore, the undersigned respectfully recommends a finding that service on Defendant was proper in this case, and that the Court has personal jurisdiction over Defendant.

### C.    Venue

"[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2); *see also* 28 U.S.C. § 1400(a) (copyright cases may be brought "in the district in which the defendant or his agent resides or may be found."). Here, venue is proper in this district because Defendant is subject to the Court's personal jurisdiction and its principal place of business is 100A Broadway Suite 417, Brooklyn, New York. Dkt. No. 1 ¶ 5. Defendant also does business in this District, where and a substantial part of the events or omissions giving rise to the claim occurred. Dkt. No. 1 ¶¶ 3, 5, 12.

### IV.    <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2</u>

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill*

8

*Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Atweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *Fin. Servs. Vehicle Tr. v. Osmanaj*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotation marks and citation omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits.  Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2:

> A party seeking a default judgment . . . must file: (1) an affidavit or declaration showing that: (A) the clerk has entered default . . . ; (B) the party seeking default judgment has complied with the Servicemembers Civil Relief Act . . . ; (C) The party against whom judgment is sought is not known to be a minor or an incompetent person . . . ; (2) . . . the papers required by Local Civil Rule 7.1, including a memorandum of law, a proposed order . . . ; and (3) a certificate of service stating that all documents in support of the request for default judgment . . . have been personally served on, or mailed to the last known residence (for an individual defendant) or business address) for other defendants.

Loc. Civ. R. 55.2(a).

In addition to the requirements of Local Rule 55.2(a), a party seeking default judgment from the Court must file a statement of damages that shows the proposed damages and their basis.  Loc. Civ. R. 55.2(c).

Here, Plaintiff has complied with Local Civil Rules 7.1 and 55.2.[3]  Plaintiff's Motion includes a proper notice of motion and supporting affidavits with exhibits.  *See* Dkt. Nos. 29-32.

---

[3] Plaintiff did not file a certification of compliance with Local Civil Rule 7.1(c)'s word count requirement, "If a brief is filed by an attorney or prepared with a computer, it must include a certificate by the attorney, or party who is not represented by an attorney, that the document complies with the word-count limitations."  Loc. Civ. R. 7.1(c).  Nonetheless, a "district court has broad discretion to determine whether to overlook a

These exhibits include a sworn affidavit certifying that the clerk has entered a certificate of default, and that Defendant is not a minor, an incompetent person, or subject to the Servicemembers Civil Relief Act. Plaintiff has also included a memorandum of law (Dkt. No. 30) and a proposed form of default judgment. Dkt. No. 32-1. Additionally, Plaintiff included a certificate of service that all required papers had been mailed to the last known business address of Defendant. Dkt. No. 33. Plaintiff's affidavit also showed the proposed damages and the basis for each element of damages in accordance with Local Civil Rule 55.2(c). Dkt. No. 31 at 4-6. Lastly, Plaintiff has also complied with the Court's January 24, 2025 Order regarding serving Defendant at 100 A Broadway Suite 417, Brooklyn, NY 11211 and via email at leanne@leannemichellewatson.com and brooklyn.living75@gmail.com. *See* Dkt. No. 25.

Therefore, the undersigned respectfully recommends that Plaintiff has shown compliance with Local Civil Rules 7.1 and 55.2.

## V.    Compliance with the Servicemembers Civil Relief Act

The Servicemembers Civil Relief Act ("SCRA") requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022). Because Defendant is an entity and not an individual, this requirement is not at issue. *See Loc. 1992 Pension Fund v. All Serv. Equip. Corp,* No. 22-CV-02522 (HG) (JMW), 2023 WL

---

party's failure to comply with local court rules." *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 332 (E.D.N.Y. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)); the Court overlooks this failure on the part of Plaintiff here.

11868244, at *3 (E.D.N.Y. July 28, 2023) (noting that the SCRA's affidavit requirement does not apply to corporate defendants).

## VI.    **Default Judgment Factors**

"A threshold question before reaching liability or damages is whether [the defaulting defendant's] conduct is sufficient to warrant default judgment being entered." *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. NAMOW, Inc.*, No. 17-CV-1469 (ARR) (SJB), 2018 WL 1440545, at *2 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018). In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp.*, 10 F.3d at 96. These factors include "the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer" should the motion be denied. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *see also Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (explaining that courts evaluate "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.").

Defendant's failure to respond to the Complaint demonstrates the willfulness of its default. As described above, Defendant was properly served with the Complaint through the Secretary of State. *See* Dkt. No. 6. Plaintiff attempted service in person at Defendant's last known address, but that was unsuccessful. *See* Dkt. No. 23. Defendant was also served by mail on March 6, 2025 at its last known address of 100 A Broadway, Suite 417, Brooklyn, NY, 11211. *See* Dkt. No. 27-3.

11

Notwithstanding that service, Defendant did not respond to the Complaint, did not appear, and has not in any way attempted to defend this action, thus constituting willfulness in the context of default judgment. *See, e.g.*, *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258 (JS) (AKT), 2014 WL 4638844, at *6 (E.D.N.Y. Sept. 16, 2014) (holding that defendant's failure to appear demonstrated willfulness of default); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) ("Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

As to the second factor, the Court cannot conclude whether Defendant has a meritorious defense to the allegations in the Complaint because Defendant did not appear in this case to proffer any defenses. *See Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *3 (E.D.N.Y. Jan. 3, 2019) ("[T]he Court cannot conclude there is any meritorious defense to the allegations because [the defendant] did not appear nor present evidence of such a defense."), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019). This factor therefore weighs in favor of entering default judgment. *Sola Franchise Corp.*, 2015 WL 1299259, at *6 ("Here, Defendant has not interposed an answer, nor has it otherwise presented any defense to the Court. These factors weigh in favor of granting a default judgment, and the allegations in Plaintiffs' Complaint are deemed admitted."); *Krevat*, 2014 WL 4638844, at *6 ("[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment.").

As to the third factor, Plaintiff will suffer prejudice if its motion is denied because without the entry of default judgment, Plaintiff could be left without the ability to recover against Defendant for the claims set forth in the Complaint. *See Grp. One Ltd. v. GTE GmbH*, 625 F.

Supp. 3d 28, 60 (E.D.N.Y. 2022) ("Plaintiff will suffer prejudice if its motion is denied because Plaintiff will be unable to recover against Defendants for the claims adequately set forth in its Amended Complaint."); *Sola Franchise Corp.*, 2015 WL 1299259, at *15 ("denying this motion would be prejudicial to [p]laintiffs 'as there are no additional steps available to secure relief in this Court'" (citation omitted)).

In sum, all three factors permit entry of a default judgment against Defendant.  The Court thus turns to evaluate liability and damages.

## VII.    Liability

Plaintiff alleges direct copyright infringement pursuant to the Copyright Act, and additional violations of the DMCA for removal of CMI.  Dkt. No. 1 ¶¶ 16-21, 28-34.[4]

### A.    Direct Copyright Infringement

"Under the Copyright Act of 1976, as amended, copyright protection attaches to 'original works of authorship'—prominent among them, literary, musical, and dramatic works—'fixed in any tangible medium of expression.'"  *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300-01 (2019) (quoting 17 U.S.C. § 102(a)).  The Copyright Act grants copyright owners the exclusive rights to reproduce the copyrighted work, "prepare derivative works based upon the copyrighted work[,]" distribute copies of the copyrighted work to the public, and publicly perform and display the copyrighted work.  17 U.S.C. § 106(1)-(6).  A person or entity that violates a copyright owner's exclusive rights is liable for copyright infringement.  17 U.S.C. § 501; *see*

---

[4] In the Complaint, Plaintiff alleges that Defendant is liable for vicarious copyright infringement under its second cause of action. *See* Dkt. No. 1 ¶¶ 22-27.  This claim was not raised in the motion for default judgment and is thus deemed abandoned.  *See* Dkt. No. 30.  *See Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 256 (E.D.N.Y. 2024) (noting that because the plaintiff did not advance an argument in support of his claim in his motion for default judgment, "the Court finds that Plaintiff has abandoned this claim."); *Arch Specialty Ins. Co. v. Canbert Inc.*, No. 19-CV-5920 (EK) (PK), 2021 WL 1200329, at *3 n.3 (E.D.N.Y. Mar. 9, 2021) (recommending that claim asserted in complaint but "not discussed in the Motion" for default judgment be deemed abandoned).

*also Strike 3 Holdings, LLC v. Doe*, No. 18-CV-5305 (DRH) (SIL), 2020 WL 6875260, at *3 (E.D.N.Y. Nov. 12, 2020), *report and recommendation adopted*, 2021 WL 21532 (E.D.N.Y. Jan. 4, 2021); *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-CV-2978 (ADS) (ARL), 2017 WL 4564763, at *2 (E.D.N.Y. Oct. 11, 2017) (citing 17 U.S.C. § 501).

To establish a claim of copyright infringement, "the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020) (cleaned up); *see FEMA Test Answers, LLC v. Forest Smith*, No. 22-CV-1108 (MKB), 2024 WL 3178705, at *4 (E.D.N.Y. June 26, 2024) (describing elements of copyright infringement claim). "Copyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability, [] and a user does not have to share copyrighted works in order to infringe a copyright." *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) (citations omitted).

Here, Plaintiff has shown ownership of a valid copyright, *see* Dkt. No. 31-3, as well as Defendant's unauthorized copying of the copyrighted work*, see* Dkt. Nos. 31-4, 31-5, as explained below.

### i.      Ownership of Copyright

The first element of a copyright infringement claim requires proof of Plaintiff's ownership of valid copyrights of the Subject Photographs.

A certificate of registration with the United States Register of Copyrights "constitutes prima facie evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted." *Fallows v. Vos Iz Neias LLC*, No. 22-CV-7964 (ARR)(LB), 2023 WL 7497080, at *3 (E.D.N.Y. Oct. 25, 2023) (quoting *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)), *report and recommendation adopted*, 2023 WL 7522732 (E.D.N.Y. Nov. 13,

2023).  "Alternatively, a plaintiff's assertion of the existence of a valid copyright, even without producing the certificate, is satisfactory in cases of default as the allegations in a complaint are accepted as true."  *Id.*; *see Renna v. Queens Ledger/Greenpoint Star Inc.*, No. 17-CV-3378 (DRH) (SI)L, 2019 WL 1061259, at *3 (E.D.N.Y. Feb. 13, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 1062490 (E.D.N.Y. Mar. 6, 2019).

Here, Plaintiff alleges that he owns the copyrights to the Subject Photographs and that the copyright was registered with the United States Copyright Office.  *See* Dkt. No. 1 ¶ 11.  In support of its copyright claim, Plaintiff attached copies of the Certificates of Registration issued by the United States Copyright Office.  *See generally* Dkt. No. 31-3.  The effective date of Plaintiff's copyright to the Subject Photographs is January 23, 2022.  Dkt. No. 31-3 at 3, 20.  The date of first publication is July 11, 2018 for copyright identification number VA 2-285-319 and the date of first publication is May 15, 2018 for copyright identification number VA 2-285-318.  *Id*.

These allegations, which the Court must accept as true, are sufficient to establish Plaintiff's ownership of valid copyrights to the Subject Photograph.  *See Strike 3 Holdings, LLC v. Doe*, No. 23-CV-998 (ENV) (JAM), 2024 WL 3369986, at *8 (E.D.N.Y. July 11, 2024) (finding that plaintiff established it was the owner of valid copyrights by alleging ownership and providing the copyright registration numbers), *report and recommendation adopted*, July 31, 2024 Dkt. Order; *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *2 (E.D.N.Y. Aug. 14, 2020) (stating "[p]laintiff has alleged ownership and registration of a valid copyright, but has not submitted a copy of the Certificate of Registration from the Copyright Office for the Video[.] The Court nevertheless accepts his allegation as true."); *Renna*, 2019 WL 1061259, at *3 ("Notwithstanding Plaintiff's failure to submit registration certificates or other

evidence of registration, the Court accepts this allegation as true for purposes of its liability analysis.").

Accordingly, Plaintiff has established the first element of a copyright infringement claim against Defendant.

### ii.    Originality and Infringement

The second element of a copyright infringement claim requires proof that the Subject Photographs are "original works," which the defendant copied without authorization. *See Balhetchet*, 2020 WL 4738242, at *3 ("In order to establish the second element, [p]laintiff must meet a 'minimal' burden to show that the [copyrighted work] is his original work and allege a violation of his exclusive rights under § 106.").

A work is "original" if it "was independently created by the author (as opposed to copied from other works), and [] it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990)). The "minimal degree of creativity" standard is "extremely low," and "[t]he vast majority of works make the grade quite easily, as they possess some creative spark." *Id.*; *see Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 896 (S.D.N.Y. 2016) ("The requirements for originality are 'modest.'" (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1321 (2d Cir. 1989)). A plaintiff can establish originality based on the author's creative choices involving the "choice of timing, location, and subject matter" of the works. *Renna*, 2019 WL 1061259, at *3. On a default judgment motion, the Court can also infer originality from the plaintiff's claim of authorship of the works. *See Balhetchet*, 2020 WL 4738242, at *3 (inferring originality from allegations in the complaint).

Here, Plaintiff alleges that he is the owner of the Subject Photographs, supported by the certificates of registrations attached to the motion. Dkt. No. 1 ¶ 11; Dkt. No. 1-1; Dkt. No. 31-3; *see Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012) (holding that a certificate of copyright registration is prima facie evidence of ownership of valid copyright, but the alleged infringer may rebut that presumption); *see also Cruz v. Cox Media Grp., LLC*, 444 F. Supp. 3d 457 (E.D.N.Y. 2020) (holding that possession of a certificate of copyright registration is prima facie evidence that plaintiff owns the copyright in question). The Complaint also sufficiently alleges that Defendant infringed Plaintiff's copyrights to the Subject Photographs by displaying them on various websites without authorization for commercial purposes. *See* Dkt. No. 1 ¶ 13-15. Plaintiff supplied screenshots of the Zillow, Trulia, and StreetEasy websites featuring what appear to be the Subject Photographs. *See* Dkt. No. 1-2.

These allegations, accepted as true, are sufficient to establish that Defendant copied "constituent elements" of the Subject Photographs and infringed upon Plaintiff's copyrights. *See Malibu Media, LLC v. Greenwood*, No. 17-CV-1099 (PAE) (SLC), 2019 WL 7580083, at *3 (S.D.N.Y. Dec. 17, 2019) (finding that plaintiff established defendant's liability as a matter of law where it alleged that defendant had downloaded and copied plaintiff's films without authorization), *report and recommendation adopted*, 2020 WL 209140 (S.D.N.Y. Jan. 14, 2020); *Arica Inst., Inc. v. Palmer*, 770 F. Supp. 188, 190 (S.D.N.Y. 1991), *aff'd*, 970 F.2d 1067 (2d Cir. 1992) (holding that plaintiff must demonstrate unauthorized copying by defendant to prove infringement); *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 327 (S.D.N.Y. 2025) ("To establish infringement, the copyright owner must demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.").

Plaintiff has therefore established that the Subject Photographs are original works, and that Defendant copied the Subject Photographs in violation of the Copyright Act. The undersigned therefore respectfully recommends that Defendant be found liable for direct copyright infringement on Plaintiff's copyrighted work.

## B.    Removal of Copyright Management Information

Plaintiff's third claim for relief concerns removal of CMI in violation of the DMCA.[5]  Dkt. No. 1 ¶¶ 28-34.  One of Congress's aims in passing the DMCA was "anti-circumvention of access controls, codified at 17 U.S.C. § 1201 *et seq*."  *Fischer v. Forrest*, 968 F.3d 216, 222 (2d Cir. 2020).  To establish a violation of 17 U.S.C. § 1202 of the DMCA, a plaintiff must prove,

> (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant "distribute[d] . . . works [or] copies of works"; (3) while "knowing that [CMI] has been removed or altered without authority of the copyright owner or the law"; and (4) while "knowing, or . . . having reasonable grounds to know" that such distribution "will induce, enable, facilitate, or conceal an infringement."

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (quoting 17 U.S.C. § 1202(b)); *see also Fischer*, 986 F.3d at 223 ("To establish a violation of this subsection, a litigant must show (1) the existence of CMI on the allegedly infringed work, (2) the removal or alteration of that information and (3) that the removal was intentional." (citing 17 U.S.C. § 1202(b))).

As to the first element, Plaintiff alleges that Mr. Ryan's photography is routinely published with CMI that includes a "name, metadata, and other indicia of authorship and attribution information."  Dkt. No. 1 ¶ 29.  The statute provides a very broad definition of CMI that includes, "[t]he title and other information identifying the work, including the information set forth on a notice of copyright," the "name of, and other identifying information about the author of a work,"

---

[5]  In the supplemental letter filed September 19, 2025, Plaintiff clarified that it does not seek relief for any claims under 17 U.S.C. § 1202(a).  Dkt. No. 35.  Thus, to the extent that the Complaint asserts claims under Section 1202(a), the undersigned respectfully recommends that such claims be deemed abandoned.  *See Jimenez*, 744 F. Supp. 3d 256.

and "[i]dentifying numbers or symbols referring to such information or links to such information." 17 U.S.C. § 1202(c); *compare Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 138 (E.D.N.Y. 2019) (accepting a more expansive view of CMI that accepts a watermarked corporate name as constituting CMI), *with Fischer*, 986 F.3d at 223 ("While an author's name can constitute CMI, not every mention of the name does."). Accepting the unopposed allegations of the Complaint, there is no need to decide whether the author's name alone constitutes CMI, as Plaintiff included metadata and other attribution information in the published photographs. Dkt. No. 1 ¶ 29.

The second element of a DMCA violation is a defendant's distribution of copyrighted works. *Mango*, 970 F.3d at 171. Here, Defendant's distribution of the Subject Photographs is not in serious dispute, as discussed in Section VII(A). Dkt. No. 1 ¶¶ 13, 18; Dkt. No. 1-2.

The third and fourth elements of a DMCA violation pertain to the statute's double scienter requirement. These requirements require the defendant to know that the CMI has been removed, and it must know or have reason to know that display of material will conceal infringement. *Mango*, 970 F.3d at 172 (citing 17 U.S.C. 1202(b)). Additionally, the statutory language allows "an infringement" to include the infringement that the party removing the CMI engaged in, despite the use of the future-tense verb "will." *Id*. Section 1202(b)(3) includes distributions without CMI that will conceal that very act of infringement. *Id.*; *see malso Michael Grecco Prods.*, 372 F. Supp. 3d at 138 (finding that removal of a watermark establishes a *prima facie* case for a violation of § 1202(b) (citing *Myeress v. Elite Travel Grp. USA*, No. 18-CV-340 (AJN), 2018 WL 5961424, at *2 (S.D.N.Y. Nov. 14, 2018))).

Here, Plaintiff alleges that Defendant intentionally removed CMI from the Subject Photographs before publishing them on various apartment search sites. Dkt. No. 1 ¶ 30. In

addition, Plaintiff also alleges that Defendant published the Subject Photographs without proper CMI and added their own attribution to the Subject Photographs with "intent to induce, enable, facilitate, or conceal infringement." *Id.* ¶ 32. This conduct clearly falls within the scope of the DMCA's prohibitions, as it was an attempt to conceal infringement that is more egregious than the removal of a watermark. *See Myeress*, 2018 WL 5961424, at *2 (finding the removal of watermark sufficient conduct to constitute a violation of DMCA); *Steinmetz v. Empire Limousine LLC*, No. 23-CV-5489 (ALC), 2024 WL 4345587, at *2 (S.D.N.Y. Sept. 29, 2024) (finding similar conduct sufficient for violations of the DMCA on default judgment); *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH) (MMH), 2023 WL 1987206, at *7 (E.D.N.Y. Feb. 14, 2023) (same), *report and recommendation adopted*, 2023 WL 2532066 (E.D.N.Y. Mar. 14, 2023); *Steinmetz v. Bridge Path Prop. Grp., LLC*, No. 23-CV-08836 (JGLC) (RFT), 2024 WL 4954049, at *7 (S.D.N.Y. Dec. 2, 2024) (same), *report and recommendation adopted*, 2025 WL 1626438 (S.D.N.Y. Apr. 3, 2025).

For these reasons, Plaintiff has established that the Subject Photographs contained CMI, Defendant distributed copies of the Subject Photographs, and Defendant did so knowing it had removed CMI and that such removal would conceal an infringement. The undersigned therefore respectfully recommends a finding that Defendant be found liable for violations of the DMCA by removing the CMI from Plaintiff's copyrighted work.

## VIII.   **Damages**

As Defendant's liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet*, 2020 WL 4738242, at *3. A plaintiff may submit

documentary evidence or detailed affidavits to support their damages claim. *Chen*, 2023 WL 2583856, at *14.

Plaintiff seeks statutory damages for the infringement pursuant to 17 U.S.C. § 504; actual damages for removal of CMI pursuant to 17 U.S.C. § 1203; statutory filing fees and service costs pursuant to 17 U.S.C. § 505; and attorneys' fees pursuant to 17 U.S.C. § 505. *See* Dkt. No. 30 at 17-20. The Court addresses each request, in turn, below.

### A.    Actual Damages

Plaintiff seeks actual damages under 17 U.S.C. § 504(b) in the amount of $77,200.00, which is based on $55,200 in estimated gross revenues and $22,000 based on $2,000 in licensing fees per the 11 Subject Photographs. *See* Dkt. No. 30 at 15.

Actual damages are available for the owner of a copyright to recover the actual damages suffered as a result of the infringement under 17 U.S.C. § 504(b). "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). When calculating gross revenues, courts have held that only revenues "reasonably related to the infringement" may be taken into account. *Barrera v. Brooklyn Music, Ltd.*, 346 F. Supp. 2d 400, 411 (S.D.N.Y. 2004) (citing *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001), *as amended* (May 15, 2001)). Courts and commentators have also argued that the intent of Congress in passing copyright laws is to enable creators to profit off uses of their work, and that, "uncertainty will not preclude a recovery of actual damages if the uncertainty is as to amount, but not as to the fact that actual damages are attributable to the infringement." *On Davis*, 246 F.3d at 164 (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.02 [A], at 12-14 (1999)).

21

In its motion, Plaintiff cites *Barrera* as support for an award of actual damages equal to "a single rental payment for each unit" that included the Subject Photographs in Defendant's listings. Dkt. No. 30 at 19.  In *Barrera*, the court did not award actual damages based on profits that the defendant made from a violation of the plaintiff's copyright, finding blanket assertions that gross revenues are directly attributable to infringement are not a sufficient causal connection to award actual damages.  346 F. Supp. 2d, at 411-12.  Similarly, *On Davis* involved a plaintiff seeking actual damages based on gross revenue for advertisements made in violation of its copyright, but the Second Circuit upheld the district court's ruling that revenue derived from other sources— separate and apart from the infringing advertisements—were not reasonably related to the infringement.  246 F.3d, at 160.

The controlling statute unequivocally states that the gross revenue method is permissible when determining profits "that are attributable to the infringement."  17 U.S.C. § 504(b).  For circumstances involving landscape and common space photographs used in connection with apartment listings, as here, it is difficult to attribute all revenue in a month to the infringing photographs.  *See* Dkt. No. 1-2.  Although damages equal to one month's profits stemming from infringement would seem "reasonable" as Plaintiff suggests, such a request fails to offer any causal connection between Defendant's infringement and the asserted profits Plaintiff contends Defendant derived from such infringement.  Dkt. No. 30 at 19; *see Barrera*, 346 F. Supp. 2d, at 411-12 (holding that the plaintiff failed to provide any evidence that monthly gross revenues were reasonably related to infringement and declining to award actual damages based on infringer's profits).

Plaintiff also requests $22,000.00 in lost profits, which reflect "a fee of $2,000 per image for use of [Plaintiff's] photography in a single listing" for the "11 [ ] images [Defendant] exploited.

22

*See* Dkt. No. 30 at 19; Dkt. No. 31-5.  Plaintiff has not offered any comparable licensing fees for the Court to consider, and the $2,000 per image amount appears to be largely out of step with market standard.  *See Harbus v. Vosa TV Inc.*, No. 24-CV-3572 (NGG) (JAM), 2025 WL 1153818, at *14 (E.D.N.Y. Apr. 21, 2025) (finding $790 a reasonable price based on quotes available from Getty Images).

Getty Images has been repeatedly recognized as a standard reference point to determine appropriate fees in copyright cases.  *See Seidman v. Yid Info Inc.*, No. 23-CV-7071 (NRM) (LB), 2024 WL 4664669 (E.D.N.Y. June 11, 2024) (approving the use of Getty images to approximate licensing fees for a photograph); *McDermott v. NYFireStore.com, Inc.*, No. 18-CV-10853, 2021 WL 952455, at *3 (S.D.N.Y. Jan. 15, 2021), *report and recommendation adopted,* 2021 WL 950507 (S.D.N.Y. Mar. 12, 2021) (finding Getty Images estimate to be "adequate evidence of a comparable licensing fee" for infringed photograph despite minor differences).  But Plaintiff's only support for the $2,000 base fee is the inclusion of past licensing agreements, showing $2,000 as the "per placement" cost and then applying an unexplained "one-time pricing adjustment" to reduce the final price from $4,000 for two images to $550.  Dkt. No. 31-6 at 3.  Plaintiff acknowledges that the exemplar licensing agreements it attached in support of the request include "special discounts which would not be provided to an infringer such as [Defendant]," but it remains unclear to the undersigned why a standard licensing agreement would offer special discounts exceeding 86%.  Dkt. No. 31 ¶ 18.  Acknowledging that a party who infringes upon Plaintiff's work would not be entitled special discounts, it would still be appropriate to assume that if Defendant obtained permission to use the Subject Photographs through ordinary procedures, it would be subject to a similar fee structure that Plaintiff had used in the past.  *See* Dkt. No. 31-6.

Plaintiff has not offered any evidence of a client actually paying the requested $2,000 per image price.

Accordingly, based on Plaintiff's submissions, the undersigned respectfully recommends that Plaintiff be awarded actual damages in the total amount of $2,475.00, representing a multiplier of 11 times (for the 11 copyrighted photographs used by Defendant) the $225.00 licensing fee Plaintiff offers as a comparable rate.[6]

### B.    Statutory Damages

Plaintiff seeks statutory damages pursuant to 17 U.S.C. § 1203 for Defendant's knowing removal of CMI from the Subject Photographs. *See* Dkt. No. 30 at 17-18. The DMCA authorizes statutory damages, "for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). Plaintiff requests an award of the statutory maximum of $25,000 per violation, which is a sum of $550,000 when multiplied by 22 offending images.[7] *See* Dkt. No. 30 at 18.

In determining the amount of statutory damages, courts in this Circuit consider the following factors:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

---

[6] A damages inquest is unnecessary here to calculate the recommended damages. *See Frost & Miller, LLP v. Heaven's Way Inv. Tr.*, No. 21-CV-6648 (AT) (BCM), 2022 WL 540070, at *2 (S.D.N.Y. Feb. 22, 2022) ("The Court may conduct the inquiry based solely upon the written submissions before it, *see Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (separate damages hearing not required), or may schedule an evidentiary hearing as to damages.").

[7] Plaintiff noted in its supplemental letter that it discovered "168 reproductions of the [Subject Photographs] by [Defendant] in 11 different real estate listings," which "could amount to 168 violations of the DMCA[.]" Dkt. No. 35 at 2. Nonetheless, Plaintiff clarified that it sought damages under the DMCA for 22 violations. *Id.* at 1.

*Myeress*, 2018 WL 5961424, at *3 ("[W]hen a defendant has acted willfully, a court should consider incorporating both a compensatory and punitive component to discourage further wrongdoing by the defendants and others[.]"); *see also Olusola v. Don Coqui Holding Co., LLC*, No. 19-CV-6909 (MKB) (JO), 2021 WL 631031, at *4 (E.D.N.Y. Feb. 18, 2021) ("Civil plaintiffs injured because of a DMCA violation may seek either actual damages or statutory damages of $2,500 to $25,000 per infringement.") (citation omitted); *Whitehead v. Mix Unit, LLC*, No. 17-CV-9476 (VSB) (JLC), 2019 WL 384446, at *3 (S.D.N.Y. Jan. 31, 2019) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2019 WL 1746007 (S.D.N.Y. Apr. 18, 2019);

Here, "[i]n light of Defendant's default, it is impossible for the Court to ascertain what, if any, profits Defendant earned by infringing (factor two) or the value of the infringing material (factor five)." *Strike 3 Holdings LLC*, 2020 WL 6875260, at *3. Plaintiff provided limited information as to the $2,000 per photo licensing fee it would have lost had Defendant paid to use the Subject Photographs. Dkt. No. 30 at 15. "Nonetheless, the Court can evaluate Defendant's state of mind and conduct from his default (factors one and six), as well as the deterrent effect of damages on Defendant (factor four)." *Id.*

Regarding factors one and six, the undersigned can infer from Defendant's default that it willfully infringed upon Plaintiff's copyright. *See Strike 3 Holdings LLC*, 2020 WL 6875260, at *3 ("[B]ased on [d]efendant's default, the Court may infer that his infringement was willful."); *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011) ("Courts frequently infer willfulness where a defendant defaults."). Concerning factor four, "the need to deter is great in cases where infringers, like [the] [d]efendant, through the use of internet downloads, work with others to infringe copyrights." *Strike 3 Holdings LLC*, 2020 WL 6875260,

at *3; *see also ee Malibu Media, LLC*, 2020 WL 8093340, at *3-*4 (finding the satisfaction of factors one, four, and six sufficient to support an award of statutory damages).

"In determining where within the range of $2,500 and $25,000 to award statutory damages, courts 'consider [several] factors, namely, the difficulty of proving actual damages, the circumstances of the violation, whether Defendants violated the DMCA intentionally or innocently, and deterrence.'" *Sheldon v. Plot Com.*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107072, at *16 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, No. 15-CV-5885 (CBA) (CLP), 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (quoting *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014)). In *Sheldon*, the court found that a maximum of $25,000 per violation was appropriate in light of the defendant's refusal to participate in litigation, hindering the Court's ability to calculate damages because of the absence of discovery. *See Sheldon*, 2016 WL 5107072, at *16. Additionally, the court found it difficult to imagine that metadata could be removed from a copyrighted photograph accidentally, solidifying its finding that the removal was intentional and the damages appropriate. *Id*; *but see Myeress*, 2018 WL 5961424, at *4 (S.D.N.Y. Nov. 14, 2018) (holding that limited facts in a default judgment situation make it difficult to assess the circumstances of each violation and awarding $5,000 per violation).

In the present case, Defendant's default renders proving damages difficult, as the Court lacks the facts required to assess the true impact of the DMCA violations. *See* Dkt. No. 31 ¶ 18 (illustrating the difficulty of determining actual damages in the face of willful default). Nonetheless, the circumstances of the DMCA violations allow the Court to infer an element of willfulness in the removal and replacement of CMI on the 22 offending photos. Dkt. No. 31-4; Dkt. No. 1 ¶ 32; s*ee Sheldon*, 2016 WL 5107072, at *16. Accordingly, without any defense

offered, the Court must conclude that Defendant acted willfully, and such conduct must be met with strong deterrence. As a result, a maximum award of $25,000 per violation would provide the requisite deterrence.

As to the requested damages, $25,000 per violation times 22 violations appears conservative, given Plaintiff's identification of 168 possible offending uses in 11 different real estate listings. *See* Dkt. No. 35 at 2. Furthermore, each unauthorized reproduction of the original work constitutes a separate violation of the DMCA, entitling a claimant to damages for each offense. *See Sheldon*, 2016 WL 5107072, at *16. Thus, Plaintiff is entitled to damages in the statutory maximum amount of $25,000 for each of Defendant's 22 violations of the DMCA. *See* 17 U.S.C. § 1203(c); *Phillips*, 2023 WL 1987206, at *10 (awarding maximum damages under the DMCA); *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK) (RWL), 2023 WL 1809707, at *11 (S.D.N.Y. Feb. 8, 2023) (same), *report and recommendation adopted*, 2023 WL 4267590 (S.D.N.Y. June 28, 2023); *Ward v. Innosub USA*, No. 19-CV-11100 (LAK) (SDA), 2021 WL 1516055, at *4 (S.D.N.Y. Mar. 15, 2021) (same).

Accordingly, the undersigned respectfully recommends a total award of statutory damages under the DMCA in the amount of $550,000.

## C.    Attorneys' Fees and Costs

In any civil action under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505.

Plaintiff requests an award of costs in the amount of $715.00, comprised of $405 in statutory filing and administrative fees and $310 in fees for service of the Complaint. *See* Dkt. No. 31 ¶ 20. Plaintiff's request is supported by the process server's invoice, counsel's proof of

27

payment, and Plaintiff's attorneys' affirmation of the costs incurred. *See* Dkt. Nos. 31, 31-8. Plaintiff's request to recover his filing fee of $405.00 is further verified by the docket. *See, e.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920 (KAM) (VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (holding that filing fees are recoverable without supporting documentation if verified by the docket); *see also* Dkt. No. 1 (indicating that $405 filing fee was paid). Accordingly, the undersigned respectfully recommends that Plaintiff be awarded costs of $715.00.

Plaintiff additionally seeks attorneys' fees in the amount of $4,896.00 based on 11 hours of work performed by an attorney and a paralegal on this matter. *See* Dkt. No. 31 ¶ 19. The Copyright Act provides that a prevailing party may recover attorneys' fees. 17 U.S.C. § 505 ("[T]he court may . . . award a reasonable attorneys' fee to the prevailing party[.]"). A fee award is not guaranteed but instead "lies within the sole and rather broad discretion of the [c]ourt." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006); *see also Aiello v. Town of Brookhaven*, No. 94-CV-2622 (FB) (WDW), 2005 WL 1397202, (E.D.N.Y. June 13, 2005) (reducing attorney fees to reasonable rates).

 "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022). "The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Hennessy v. 194 Bedford Ave Rest. Corp.*, No. 21-CV-5434 (FB)(RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022), *report and recommendation*

*adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022) (internal citations and quotation marks omitted). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id*. (cleaned up). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours. *Id*. "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, the record shows that an award of attorneys' fees is appropriate. Plaintiff asserts that the Court should award attorneys' fees based on the following hourly rates: $395.00 for associate attorney David Jenkins, and $145.00 for paralegal Alexandra Sulich. *See* Dkt. No. 31 ¶ 19. In support of the application, Plaintiff provides timesheets of the attorney and paralegal who worked on this case. *See* Dkt. No. 31-7.

Mr. Jenkins has previously been awarded a rate of $395.00. *See Shihab v. Office Magazine, Inc.*, No. 23-CV-10294 (JPO), (S.D.N.Y. July 10, 2024) ("Attorneys' fees in the amount of $4,740.00 [based off requested hourly rate of $395]."). Additionally, Mr. Jenkins has been awarded attorney's fees of $350 in the recent past. The hours spent and the rate of $350 hourly is within the range of reasonable amount for associates in this District working on similar matters. *See Steinmetz v. Bridge Path Prop. Grp., LLC*, No. 23 CIV. 08836 (JGLC) (RFT), 2024 WL 4954049, at *11 (S.D.N.Y. Dec. 2, 2024), *report and recommendation adopted*, No. 23-CV-

8836 (JGLC), 2025 WL 1626438 (S.D.N.Y. Apr. 3, 2025) (The hours spent and the rate of $350 hourly is within the range of reasonable amount for associates in this District working on similar matters) (citing *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 201 (S.D.N.Y. 2016)).  In light of past awards and Mr. Jenkins representations about his work in this case, *see* Dkt. No. 31, the Court finds that a reasonable rate is $395 per hour.  *See Id.*

Plaintiff also requests an award of fees for paralegal Alexandra Sulich at an hourly rate of $145.00 per hour.  Dkt. No. 31 ¶ 19.  *Morales*, 2023 WL 7684775, at *8 (citing *Montanes v. Avanti Pizza 2 Inc.*, No. 21-CV-586 (ERK), 2022 WL 17820103, at *8 (E.D.N.Y. Oct. 20, 2022) (collecting cases for the proposition that in default judgment cases, paralegals are typically awarded a $75 hourly rate); *Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service, LLC*, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008) ("Where the moving party fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested").  No information, however, is provided regarding Ms. Sulich's background or experience that might support an award of the requested rate.

Where an applicant fails to provide background and experience information that would enable a court to assess the reasonableness of a requested rate, a court may use its discretion to award fees at a lower rate.  *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020).  *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 238 (E.D.N.Y. 2024) (finding $75 per hour a reasonable rate for paralegals); *but see Prime Contractors Inc. v. APS Contractors Inc.*, No. 22-CV-1581 (WFK), 2025 WL 1621692, at *18 (E.D.N.Y. June 9, 2025) (holding that $150 is an acceptable hourly rate for straightforward breach of contract claims); *Maddaloni v. Pension Tr. Fund of Pension, Hospitalization & Benefit Plan of*

*Elec. Indus.*, No. 19-CV-3146 (RPK) (ST), 2023 WL 7000885, at *6 (E.D.N.Y. Sept. 1, 2023), *report and recommendation adopted*, 2023 WL 6457756 (E.D.N.Y. Oct. 4, 2023) (finding $150 per hour as acceptable for a "highly specialized area of law," such as ERISA). Consequently, the Court recommends that Ms. Sulich's hourly rate be lowered to $75 per hour.

Next, the court must determine the reasonableness of the number of hours expended by counsel. *Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *9 (E.D.N.Y. Aug. 19, 2020), *report and recommendation adopted*, 2020 WL 5259056 (Sept. 30, 2020). Courts examine the time records to exclude what appears to be excessive or unnecessary hours and "with a view to the value of the work product of the specific expenditures to the client's case." *Id.* (citations and quotations omitted). Here, Plaintiff's counsel claims that 8.6 hours were worked. Dkt. No. 31-7. The time records include sufficient notes as to what each hour entailed (*id.*) and the Court does not find that the work is excessive.

Therefore, the reasonable attorneys' fee award is calculated as follows:

| Timekeeper | Requested Rates | Approved Rates | Hours | Fees |
|---|---|---|---|---|
| David Jenkins | $395 | $395 | 11 | $4345.00 |
| Paralegal | $145 | $75 | 3.8 | $285.00 |
| | | **Total Attorneys' Fees** | | $4630.00 |

Accordingly, this Court respectfully recommends that Plaintiff be awarded costs in the amount of $715.00 and attorneys' fees in the amount of $4,630.00.

## IX.    Conclusion

Accordingly, the undersigned respectfully recommends that Plaintiff's Motion be granted in part and denied in part. The undersigned further recommends that judgment be entered in favor of Plaintiff for $557,820.00, comprised of: actual damages in the amount of $2,475.00; statutory damages in the amount of $550,000.00; costs in the amount of $715.00; and attorneys' fees in the amount of $4,630.00.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant at the below addresses by October 1, 2025.

City Vista, Inc.
100A Broadway
Suite 417
Brooklyn, NY 11211

Proof of service shall be filed on ECF by October 1, 2025.  Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Merchant.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:        Brooklyn, New York
              September 30, 2025                      **SO ORDERED.**

                                                       */s/ Joseph A. Marutollo*
                                                      JOSEPH A. MARUTOLLO
                                                      United States Magistrate Judge